IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ASHLEY ALEXANDER**                                                                **PLAINTIFF**

v.                    Case No. 5:24-CV-_____

**TYSON FRESH MEATS, INC.**                                                        **DEFENDANT**

### ORIGINAL COMPLAINT

COMES NOW Ashley Alexander, by and through her attorneys Chris Burks and Stewart Whaley of WH LAW, for her Original Complaint against Tyson Fresh Meats, Inc., she does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. Plaintiff brings this action against the Defendant for violation under the Americans with Disabilities Act of 1990 ("ADA") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's discriminatory actions toward Plaintiff, resulting in her termination.

2. Plaintiff received inequitable treatment and an adverse employment action as a result of her status as a disabled person with a disability that substantially limited a major life activity.

3. Upon information and belief, Defendant has willfully and intentionally committed violations of ADA and ACRA, as described, *infra*.

### II. JURISDICTION AND VENUE

4. The United States District Court for the Western District of Arkansas has subject

matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the ADA.

5. Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as the ADA claims alleged in this Complaint.

6. Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7. The acts complained of herein were committed and had their principal effect within the Fayetteville Division of the Western District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8. Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

9. The witnesses to ADA and ACRA violations alleged in this Complaint reside in this District.

### III. THE PARTIES

10. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11. Plaintiff is a resident and citizen of Benton County, Arkansas.

12. Plaintiff Ashley Alexander was hired by Defendant in February 2023.

13. She was hired as a Senior Analyst (a non-managerial position) but worked as a Financial Controller (a manager position).

14. Plaintiff was terminated from her employment with Defendant on February 22, 2024.

15. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under the ADA and ACRA.

16. Defendant Tyson Fresh Meats, Inc. is a foreign for profit corporation registered and licensed to do business in Arkansas.

17. Defendant Tyson Fresh Meats, Inc. can be served through its agent for service, United Agent Group Inc., at 609 SW 8th Street, #600, Bentonville, AR 72712.

18. Defendant Tyson Fresh Meats, Inc. is an "employer" within the meanings set forth in ADA and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV.  FACTUAL ALLEGATIONS

19. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

20. Plaintiff was hired by Tyson Fresh Meats, Inc. ("Tyson") in February 2023. Plaintiff originally worked remotely from her home. In July 2023, Plaintiff relocated to Arkansas to work primarily in person from Defendant's corporate headquarters.

21. At approximately the same time, Plaintiff's manager left the company and she began working under a new manager. After working under this manager for approximately two months, Plaintiff disclosed to her new manager that she has disabilities that affect her daily life, specifically complex Post-Traumatic Stress Disorder (cPTSD), an anxiety disorder, and Attention Deficit Hyperactivity Disorder (ADHD). These conditions at times affect Plaintiff's ability to concentrate, focus, sleep, and complete complex, detail-oriented tasks.

22. After the initial conversation in which Plaintiff disclosed her disabilities to her manager, Plaintiff observed that her manager's attitude toward her and her treatment of her immediately began to change, to the degree that Plaintiff's coworkers noticed and commented on it to her.

23. While Plaintiff was hired as a senior analyst, she effectively performed the job duties of a financial controller, which was a higher-ranking, higher-paid, managerial position. Plaintiff did not receive compensation commiserate with what a financial controller was ordinarily paid, even though she performed the job duties of a financial controller.

24. As a result, Plaintiff had a larger and more complex workload than the other individuals on her team. Plaintiff also worked long hours on a continuous basis, typically between seventy and ninety hours a week, while other members of her team typically worked no more than fifty hours a week. Plaintiff had to work during vacations and holidays to keep up with her workload, which other members of her team typically did not do.

25. On or about October 30, 2023, after months of carrying a heavy workload and working significantly longer hours than her coworkers, Plaintiff had a panic attack at work. Because Defendant was holding a Halloween event attended by employees' children, Plaintiff was unable to focus, and this event exacerbated her panic attack symptoms. Plaintiff left work and contacted her manager to let her know she would continue to work from home.

26. Plaintiff's manager responded by asking Plaintiff if she should be demoted because the job was too much for her to handle, implying that because of Plaintiff's disabilities, Plaintiff was unable to perform her job duties.

27. In spite of Plaintiff's disabilities, she was a high performer who handled a large workload and worked longer hours than the other members of her team for months. Leaving her office to work from home on a single day because of a panic attack did not necessitate Plaintiff being demoted from her position.

28. In December 2023, Plaintiff's manager met with her regarding a large and complex report that Plaintiff handled as part of her job duties. In spite of the fact that Plaintiff had never been fully trained on this report, Plaintiff had completed this report without errors in the past. However, Plaintiff's November 2023 report did have some errors. Plaintiff's manager told her that if she made more mistakes in the next thirty days, she would be put on a continuous improvement plan, which could lead to her termination.

29. Plaintiff asked for help and requested more training to improve her performance. Plaintiff subsequently completed this report without errors. She was never placed on a continuous improvement plan.

30. In February 2024, Plaintiff sought counseling to treat her disabilities through Defendant's Employee Assistance Program (EAP), which offered counseling sessions to employees as a benefit of their employment with Defendant.

31. Plaintiff emailed her manager to ask if she could use her lunch break to leave work to attend her counseling session. Plaintiff's manager's response was to tell Plaintiff that she had to work until 5pm every day, even though Plaintiff regularly worked hours and hours of overtime without additional compensation, as she was a salaried worker.

32. It was normal for Plaintiff's coworkers to leave work for appointments or for other errands, and her coworkers were not questioned by her manager, or told that they had to work until 5pm every day.

33. Plaintiff's manager then recalled that email and told Plaintiff she could work from home to attend her appointments, even though Plaintiff had not requested to work from home and only asked to use her lunch break to attend her counseling appointment. Plaintiff's email communications with her manager about her appointment continued until approximately 6pm that evening.

34. At 8am the following day, on February 22, 2024, Plaintiff was terminated. Plaintiff was told she was terminated because of a minor error in an email Plaintiff had sent. During the meeting, Defendant's HR manager told Plaintiff that she and Plaintiff's manager had discussed her at length the previous day (the day Plaintiff had requested to use her lunch break for her counseling appointment), and that they could see no other option but to terminate Plaintiff.

35. Defendant's reason for Plaintiff's termination was pretextual. Plaintiff's coworkers had made similar minor errors on tasks and were not terminated.

36. Plaintiff was also told previously that if she continued to make mistakes she would be placed on a continuous improvement plan, which was common practice for employees with performance issues. However, Plaintiff was never placed on a continuous improvement plan, nor was she disciplined for performance issues, nor was her performance worse than similarly situated non-disabled coworkers.

37. Instead, Plaintiff was terminated because she disclosed her disabilities to her manager, who immediately began treating Plaintiff differently and who terminated Plaintiff a day after Plaintiff asked to use her lunch hour to receive counseling for her disabilities.

38. Her manager had previously asked Plaintiff if she wanted to be demoted simply because Plaintiff left work after suffering a panic attack and continued to work from home.

39. Plaintiff was a high-performing employee who handled a larger and more complex workload than other members on her team and who worked significantly longer hours to manage her tasks.

40. Other employees left work because they were ill, they had appointments, or they were running errands. Other employees made minor mistakes at work. These employees were not terminated abruptly, without warning or any discipline, as Plaintiff was.

41. As a result of the ongoing discrimination Plaintiff experienced as a result of her status as a disabled person, Plaintiff was terminated from her employment on February 22, 2024.

## V. FIRST CLAIM FOR RELIEF – ADA Claims

42. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

43. Plaintiff filed a timely charge with the EEOC alleging violations of Title I and Title V of the ADA by Defendant.

44. Plaintiff received a right to sue letter, and thus exhausted her administrative remedies.

45. Defendant engaged in unlawful employment practices at their facility in Springdale, Arkansas, in violation of the Americans with Disabilities Act of 1990.

46. Specifically, and as detailed above, Plaintiff, who is disabled, was terminated as a result of disability discrimination.

47. Defendant employs non-disabled employees who were not subject to the same treatment that Plaintiff experienced during her employment.

48. Specifically, Plaintiff was asked if she should be demoted to a lower position because she left work to work from home after suffering a panic attack due to her disclosed disabilities, which included an anxiety disorder, cPTSD, and ADHD.

49. Plaintiff was terminated ostensibly for performance issues, even though she was not disciplined for performance issues or placed on an improvement plan.

50. Plaintiff's performance issues were minor and similar to those committed by non-disabled employees, who were not disciplined or terminated. Additionally, Defendant has placed other employees who made errors on improvement plans or disciplined them; Plaintiff was not disciplined or placed on a plan, but was instead terminated.

51. Plaintiff was also terminated just one day after she requested to use her lunch break to attend counseling sessions to treat her disabilities, to which her manager responded by telling her she needed to work until 5pm every day.

52. As a result, Plaintiff was treated disparately from Defendant's non-disabled employees.

53. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

54. However, Plaintiff was terminated from her position within the relevant statutory period.

55. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

56. The unlawful employment practices complained of above were and are intentional.

57. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

58. Pursuant to Americans with Disabilities Act of 1990, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of the ADA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of the ADA.

### VI. SECOND CLAIM FOR RELIEF – ACRA Claims

59. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

60. Plaintiff has timely filed a charge with the EEOC, received a right to sue letter, and has thus exhausted her administrative remedies.

61. Defendant engaged in unlawful employment practices at their facility in Springdale, Arkansas, in violation of Ark. Code Ann. §§ 16-123-101, *et seq.*

62. Specifically, and as detailed above, Plaintiff, who is disabled, was terminated as a result of disability discrimination.

63. Defendant employs non-disabled employees who were not subject to the same treatment that Plaintiff experienced during her employment.

64. Specifically, Plaintiff was asked if she should be demoted to a lower position because she left work to work from home after suffering a panic attack due to her disclosed disabilities, which included an anxiety disorder, cPTSD, and ADHD.

65. Plaintiff was terminated ostensibly for performance issues, even though she was not disciplined for performance issues or placed on an improvement plan.

66. Plaintiff's performance issues were minor and similar to those experienced by non-disabled employees, who were not disciplined or terminated. Additionally, Defendant has placed other employees who made errors on improvement plans or disciplined them; Plaintiff was not disciplined or placed on a plan, but was instead terminated.

67. Plaintiff was also terminated just one day after she requested to use her lunch break to attend counseling sessions to treat her disabilities, to which her manager responded by telling her she needed to work until 5pm every day.

68. As a result, Plaintiff was treated disparately from Defendant's non-disabled employees.

69. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

70. However, Plaintiff was terminated from her position within the relevant statutory period.

71. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

72. The unlawful employment practices complained of above were and are intentional.

73. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

74. Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of ACRA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VII.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Ashley Alexander respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A)    A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(B)    A declaratory judgment that Defendant's practices violate Americans with Disability Act of 1990 and the related regulations;

(C)    Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(D)　　Judgment for damages pursuant to Americans with Disabilities Act of 1990, for all compensation, compensatory, and punitive damages owed to Plaintiff;

(E)　　An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(F)　　Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**Ashley Alexander, PLAINTIFF**

WH Law
Fayetteville Office
479.888.4357

By:　　*/s/ Chris Burks*
　　　　Chris Burks (ABN: 2010207)
　　　　chris@wh.law

　　　　Mailing Address:
　　　　1 Riverfront Place, Suite 745
　　　　North Little Rock, AR 72114